## Case No. 5,764.

### GREENE v. BRIGGS et al.

[1 Curt. 311; 1 15 Law Rep. 614.]

Circuit Court, D. Rhode Island. Nov. Term, 1852.

CONSTITUTIONAL LAW—DUE PROCESS OF LAW—CRIMINAL PROSECUTION—TRIAL BY JURY—JURISDICTION OF JUSTICE OF PEACE.

1. The words, "the law of the land," in the tenth section of the first article of the constitution of Rhode Island, mean due process of law; in which is included the right to contest the charge and be discharged, unless it is proved.

[Cited in Den v. Hoboken Land & Imp. Co., 18 How. (59 U. S.) 280; Re Ludwigson, Case No. 8,601; Santa Clara Co. v. Southern

---

1 [Reported by Hon. B. R. Curtis, Circuit Justice.]

Pac. R. Co., 18 Fed. 420; Hurtado v. California, 110 U. S. 516, 4 Sup. Ct. 294.]

[Cited in Hibbard v. People, 4 Mich. 129; East Kingston v. Towle, 48 N. H. 60; Dunn v. Burleigh, 62 Me. 30.]

2. An act of the legislature of that state, which authorizes a criminal prosecution upon a complaint against no person in particular, and not containing a charge of the substantive facts necessary to constitute the offence, is inoperative, because such a complaint is not due process of law.

[Cited in The J. W. French, 13 Fed. 919.]

[Cited in Copp v. Henniker. 55 N. H. 194; Hunt v. Lucas, 99 Mass. 406.]

3. The legislature cannot make the right to a trial by jury, in a criminal case. dependent on giving a bond, with surety, for the payment of the penalty and costs.

[Cited in U. S. v. Three Tons of Coal, Case No. 16,515.]

[Cited in Fisher v. McGirr, 67 Mass. (1 Gray) 7; Allen v. Staples. 72 Mass. (6 Gray) 492; Hapgood v. Doherty, 74 Mass. (8 Gray) 374; State v. Peterson, 41 Vt. 508; State v. Doherty, 60 Me. 506; Chapin v. James. 11 R. I. 90; State v. Cloran. 47 Vt. 283; Mathews v. Tripp, 12 R. I. 259.]

4. An order, made by a justice of the peace, upon a matter not within his jurisdiction, is merely void. He must not only have jurisdiction over the subject-matter, but of the process; and if the law, conferring jurisdiction, is in conflict with the constitution, so far as it respects the process. the jurisdiction does not exist.

[Cited in State v. Gurney. 37 Me. 162; Thurston v. Adams. 41 Me. 421. Distinguished in Re Liquors of McSoley, 15 R. I. 613, 10 Atl. 659.]

This was an action of replevin. The defendants, in answer thereto, filed the following avowry:

"And the said defendants come and defend the force and injury when, &c., and well avow the taking of the goods and chattels in the declaration aforesaid above-mentioned, in the said place in which, &c., and the detention thereof, &c., and justly, &c., because they say that the said Nathan M. Briggs now is a police constable of the city of Providence, in said district, and for a long time before, namely, ever since the 25th of February, A. D. 1852, was a police constable as aforesaid; and that on the third day of September, A. D. 1852, at said Providence, Daniel K. Chaffee, George W. Wightman, and Warren G. Slack, all then and there voters in said Providence, did, before Samuel W. Peckham, Esq., then and there one of the justices of the court of magistrates of said Providence, make complaint under oath, in writing, in the words and figures following, to wit: See the paper hereunto annexed, marked A, which is hereby made a part of this plea. Whereupon the said Samuel W. Peckham, Esq., justice. as aforesaid, did then and there issue a warrant of search, in the words and figures following, to wit: See the paper hereunto annexed, marked B, which is hereby made a part of this plea. And that, by virtue of said warrant, the said Briggs did then and there proceed to search the premises described in said warrant, and did then and there seize the goods and chattels aforesaid, and did then and there convey them to some proper place of security; and that the said Briggs did then and there summon Moses K. Holbrook. of said Providence, as the owner or keeper of said goods and chattels, to appear at the next regular session of said court of magistrates, to be holden on the 4th day of September, A. D. 1852, at which time and place said Holbrook appeared. And that the said Briggs, on the 4th day of September, A. D. 1852, at said Providence, did return said warrant to said court of magistrates, with his doings thereon, in the words and figures following, to wit: See the paper hereunto annexed, marked C, which is hereby made a part of this plea. And that, on the 7th day of September, A. D. 1852, at said Providence, said Holbrook appeared before said court in person, and then and there made answer to said complaint, in the words and figures following, to wit: See the paper hereunto annexed, marked D, which is hereby made a part of this plea. And that the said [William H.] Greene, on said 7th day of September, 1852, at said Providence, made claim, in writing, before said court, to a portion of said goods and chattels, in the words and figures following, to wit: See the paper hereunto annexed, marked E, which is hereby made a part of this plea. And that one Albert A. Hall, of East Greenwich, in said district, on the —— day of September, A. D. 1852, at said Providence, made claim, in writing, before said court, to a portion of said goods and chattels, in the words and figures following, to wit: See the paper hereunto annexed, marked F, which is hereby made a part of this plea. And that said two last-mentioned claims were then and there ruled out by said court, on the ground that said court would take notice of no claim to said goods and chattels, unless the claimant appeared in person. That, on said 7th day of September, A. D. 1852, at said Providence, and before proceeding to trial, the said complainants moved said court of magistrates, then and there to amend said complaint, by inserting the words 'then and there' before the words 'intended for sale;' and also the words, 'to the complainants unknown,' after the words 'by a person;' which motion was then and there opposed by said Holbrook, (who was then and there before said court in person,) by his said attorney, Thomas A. Jenckes, Esq.; and the said Holbrook then and there moved said court, by his said attorney, to quash said complaint; which said last-mentioned motion was then and there dismissed by said court, and said first-mentioned motion was then and there granted by said court, and said amendment was then and there made by said court. See said paper. hereunto annexed, marked A, with said amendment interlined, which is hereby made a part of this plea. That, on the 15th day of September, A. D. 1852, at said Providence. and subsequent to the introduction of said

complainant's testimony, by which it appeared that the store on Broad street was entered about five o'clock in the afternoon, the doors being open; and that the door of the Orange street store was broken open about seven o'clock in the evening of the third of September, 1852, and that the goods and chattels aforesaid were carried from both stores between nine and ten o'clock the same evening, said Holbrook, who was then and there present in person, moved said court, by his said attorney, to quash said complaint, which said motion, upon argument, was, on the 20th day of September, A. D. 1852, overruled by said court. That afterwards, to wit, on the 27th day of September, A. D. 1852, at said Providence, said court, after hearing the pleadings, evidence, and arguments of said parties, rendered judgment thereon, in the words and figures following, to wit: See the paper, hereunto annexed, marked H, which is hereby made a part of this plea. And that said court thereupon, on the 27th day of September, A. D. 1852, at said Providence, delivered to said Briggs an order, in the words and figures following, to wit: See the paper, hereunto annexed, marked I, which is hereby made a part of this plea. And this they are ready to verify. And so the said defendants well avow the taking and detention aforesaid, and pray judgment and a return of the same goods and chattels to be adjudged to them, and that the said Briggs may proceed and destroy said liquors, in the presence of said Hudson, as ordered by said court of magistrates, and for their damages and costs. By their attorney, J. M. Clarke."

### (A.)
### Complaint and Search-Warrant.

To Samuel W. Peckham, Esquire, one of the Justices of the Court of Magistrates, in the City of Providence, in the County of Providence, in the State of Rhode Island, and Providence Plantations.

Daniel K. Chaffee, Warren G. Slack, and George W. Wightman, voters in the city of Providence, in said county, on oath complain, in the name and behalf of the state, that they have reason to believe, and do believe, that, at said Providence, on the third day of September, 1852, with force and arms, spirituous or intoxicating liquors are kept or deposited, and then and there intended for sale, by a person, to the complainants unknown, who is not authorized to sell the same in said Providence, under the provisions of the act entitled "An act for the suppression of drinking-houses and tippling-shops," in the building number 81 Broad street, and the buildings in the rear thereof, and connected therewith, running back to Middle street; also the building connected therewith on Orange street, (being the building between the buildings occupied by Henry A. Howland and Solomon Pareira,) together with the cellars and yards belonging to said buildings, against the statute, and the peace and dig-

nity of the state. Wherefore they pray advice, and that process may issue, and that the said premises may be searched, and that the owner or keeper of said liquors may be summoned to answer to this complaint, and be further dealt with relative to the same, according to law. Dated at Providence, this 3d day of September, A. D. 1852. D. K. Chaffee. Geo. W. Wightman. Warren G. Slack.

Providence, sc. In Providence, this 3d day of September, A. D. 1852, personally came D. K. Chaffee, Geo. W. Wightman, and Warren G. Slack, subscribers to the above complaint, and made oath to the truth of the same. Before me, Samuel W. Peckham, Justice of the Court of Magistrates.

### (B.)
### State of Rhode Island, and Providence Plantations.

Providence, sc.

To the Sheriff, his Deputy, or to either of the Town Sergeants, or Constables in the County of Providence: Greeting.

(L. S.) Complaint having been made to me, on oath, as above written, you are therefore hereby required, in the name of said state, forthwith to proceed to search the premises above described, to wit: the building number 81 Broad street, and the buildings in the rear thereof, and connected therewith, running back to Middle street; also the building connected therewith on Orange street, (being the building between the buildings occupied by Henry A. Howland and Solomon Pareira,) and the cellars and yards belonging to said buildings, in the city of Providence; and if any such liquors are found therein, to seize the same, and convey them to some proper place of security, and there keep them until final action is had thereon; and to summon the owner or keeper of said liquors (if he shall be known to you) to appear at the next regular session of the court of magistrates, on the 4th day of September, 1852, at 8 o'clock, a. m., to show cause, if any he have, why said liquors should not be adjudged forfeited, and be destroyed, and he be adjudged to pay a fine of twenty dollars, to the use of the state, and all costs that shall accrue hereon. And for so doing, this shall be your warrant. Hereof fail not. Given under my hand and seal, at Providence, in said county, this 3d day of September, in the year 1852. Samuel W. Peckham, Justice of the Court of Magistrates.

### (C.)
Providence, sc.                    Sept. 3d, 1852.

I have taken aid and diligently searched the within described premises, and have found and seized the following described liquors, viz: to wit, in the buildings number 81 Broad street, and the buildings in the rear thereof, and connected therewith, running back to Middle street, the following described liquors, namely: Here follows description of liquors. Also, the liquors, here-

after described, in the building connected therewith on Orange street, (being the building between the buildings occupied by Henry A. Howland and Solomon Pareira,) as follows, namely: Here follows description of liquors. And have summoned Moses K. Holbrook, as the owner or keeper of said liquors, to appear before the magistrates' court, on the 4th day of September, 1852, at 8 o'clock, a. m. Nathan M. Briggs, Police Constable.

On the 7th of September, (by paper referred to in plea marked D.) Moses K. Holbrook, of Providence, summoned by the officer who made service of the warrant, averred, before the court of magistrates, that he held the liquors seized in the building on Broad street, as the agent of William H. Greene, of New York, on storage; that no sale had been made, nor was any sale intended to be made, since the 19th of July last; and that he made no appearance as the owner, keeper, or possessor of the other liquors. On the same day William H. Greene, of New York, filed his claim, in writing, (marked E,) in said court, to said liquors, averring that they were deposited in said buildings on storage, before the 19th of July, 1852; and that they were not kept or deposited for sale in the city of Providence, contrary to the provisions of the act under which they were seized, and demanded that they be returned to him. On the same day, A. A. Hall, of East Greenwich, filed his claim, in writing, (marked F,) in said court, claiming one cask of native wine, making the same averment as that made by Greene, and demanded that said cask be returned to him. On the 27th day of September, the court of magistrates entered the following decree:

### (H.)

Be it remembered, that, on the 3d day of September, 1852, the following spirituous and intoxicating liquors, to wit: (here follows a description of the liquors,) were seized, upon a search-warrant, issued by Samuel W. Peckham, one of the justices of the court of magistrates, in the city of Providence, in said county, and one of the justices of the peace for said county, on the complaint of D. K. Chaffee, George W. Wightman, and Warren G. Slack, voters in said city, in writing, in the name and behalf of the state, setting forth that, with force and arms, at said Providence, on the 3d day of September, 1852, &c., &c., (following the language of the warrant.) And Moses K. Holbrook, the person summoned by the officer as the owner or keeper of said liquors, personally appeared before said court of magistrates, as the keeper of the liquors seized in store No. 81 Broad street, but not as the keeper of the other liquors seized on said warrant. And now, on this 27th day of September, 1852, upon a trial of said complaint and warrant, and after a full hearing of the evidence adduced, and arguments of counsel for the complainants, and for said Holbrook, it is adjudged

by said court, that the said Moses K. Holbrook is the keeper of all said liquors; and that it not having been shown to the court, by "satisfactory proof, that said liquors are of foreign production; that they have been imported under the laws of the United States, and in accordance therewith; that they are contained in the original packages in which they were imported, and in quantities not less than the laws of the United States prescribe;" and it being the opinion of the court, that said liquors have been "kept and deposited for the purposes of sale, contrary to the provisions of said act," said liquors are adjudged forfeited, and are ordered to be destroyed, in the presence of William H. Hudson, who is appointed to witness the destruction thereof; but the said Moses K. Holbrook, having withdrawn himself from this court, and the said act not providing any way for the court to keep or bring him before them, the court cannot impose upon him the fine provided therein.

On the same day, the court of magistrates issued the following order to destroy:

### (I.)

Providence, sc.

(L. S.)     To the Sheriff, his Deputy, or to either of the Town Sergeants or Constables in the County of Providence: Greeting.

Whereas, the following described spirituous or intoxicating liquors, to wit, (here follows a description of the liquors,) have been seized, on a warrant of search issued by Samuel W. Peckham, one of the justices of the court of magistrates, in the city of Providence, on the complaint of Daniel K. Chaffee, George W. Wightman, and Warren G. Slack, voters in said city of Providence, according to the provisions of the eleventh section of an act entitled "An act for the suppression of drinking-houses and tippling-shops," in the building No. 81 Broad street, and the buildings in the rear thereof, and connected therewith, running back to Middle street; also, the building connected therewith on Orange street, (being the building between the buildings occupied by Henry A. Howland and Solomon Pareira,) together with the cellars and yards belonging to said buildings, in said city of Providence. And whereas, Moses K. Holbrook, the owner or keeper of said liquors, seized as aforesaid, having been duly summoned to appear before said court, has appeared before said court, and has failed to show, by satisfactory proof, to said court, that said liquors are of foreign production; that they have been imported under the laws of the United States, and in accordance therewith; that they are contained in the original packages in which they were imported, and in quantities not less than the laws of the United States prescribe; and whereas, in the opinion of said court, said liquors have been kept and deposited for the purpose of

sale, contrary to the provisions of said act, said liquors have been, by said court, adjudged forfeited, and ordered to be destroyed, in pursuance of the provisions of said act. You are, therefore, hereby ordered to destroy said liquors, in the presence of William H. Hudson; and for so doing, this shall be your authority. Witness, Francis E. Hoppin, at said Providence, this 27th day of September, A. D. 1852. Charles Hart, Clerk.

The plaintiff demurred to this plea, as insufficient in law to authorize the taking of said goods and chattels by said defendants, in the manner set forth in their plea; and the defendants joined in demurrer.

Jenckes, Ames and Carpenter, for plaintiff.
James M. Clarke, Esq., for defendants.

CURTIS, Circuit Justice. This is an action of replevin for a quantity of wine and spirits, alleged to have been unlawfully taken and detained by the defendants, who justify the taking and detention by virtue of certain proceedings set forth in their avowry. These proceedings depend, for their validity, upon an act of the general assembly of the state of Rhode Island, passed at its May session in the year 1852, and entitled "An act for the suppression of drinking-houses and tippling-shops" [Laws R. I. 1851-53, p. 915]. The plaintiff, having demurred to the avowry, insists that some of the provisions of this act, necessary to maintain the validity of these proceedings, are in conflict with the constitution of the state, and therefore, void; and so the taking and detention complained of are not justified. The plaintiff is a citizen of the state of New York. Under the constitution and laws of the United States, he is entitled to come into this court, and find here a remedy for any legal wrong done to him by citizens of Rhode Island. An adjudication upon his rights may, and in this case does, involve important questions, arising under the constitution and laws of the state; but in such a case, it is our duty to determine them; a duty, which we should neither seek nor avoid, but perform.

The constitution of Rhode Island (article 1, § 15), declares—"The right to the trial by jury shall remain inviolate." The 10th section of the same article is as follows:—"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury; to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining them in his favor, to have the assistance of counsel in his defence, and shall be at liberty to speak for himself; nor shall he be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land." Taking these two sections together, it may be said of them in general, that while the 15th section recognizes the existence of the right of trial by jury, and makes effectual

provision for its preservation, as it existed when the constitution was formed, the 10th section declares, not only that this right is to exist in all criminal cases, but is to be accompanied by certain incidents and modes of proceeding, which are therein prescribed and defined. In other terms, in civil causes, a trial by jury is to be had in those classes of cases in which it had been practised, down to the time when the constitution was formed; and such trial is to be substantially in accordance with such modes of proceeding as had then existed, or might thereafter be devised by the legislature, without impairing the right itself. But in all criminal cases, the right to a trial by jury, accompanied by the other privileges enumerated and defined, is absolutely to exist.

In order to decide whether those parts of this act, necessary to sustain the avowry, are in conflict with these fundamental laws, we must have a clear view of what the act contains; and, as it provides for modes of proceeding quite anomalous, and some of its clauses need construction, I shall begin by stating what these parts of the act, in my judgment, authorize and require: and I shall then consider, whether the proceedings, thus authorized and required, are in harmony with the constitution of the state. Under this act, three voters, in the town or city where the complaint is made, may make a complaint, in writing, under oath, to some justice of the peace, setting forth that they have reason to believe, and do believe, that spirituous or intoxicating liquors are kept or deposited and intended for sale in that town or city, by some person not authorized to sell the same under the provisions of the act. It is not required that any particular person should be named in the complaint, as the person intending to sell such liquors contrary to law, nor was any person in fact named in the complaint which was the foundation of the proceedings in question. Upon the filing of such a complaint, the justice of the peace is to issue a warrant of search, directed to the sheriff, his deputy, the town sergeants, or constables in the county, one of whom is to proceed to search the premises described in the warrant; and if any spirituous or intoxicating liquors are there found, he is to seize, secure, and keep them, until final action shall be had thereon. The officer is further required to summon the owner, or keeper of the liquors seized, if known to him; but there is no other provision for giving notice to the owner or possessor, prior to an adjudication of forfeiture. There is a provision, that in case the owner is unknown to the officer, the liquors shall not be destroyed, until they shall have been advertised for two weeks, to enable the agent of any town, duly authorized to sell such liquors, to appear and claim them; and upon making due proof of title, the liquors are to be delivered to him, and not destroyed. But this has no application to any other owner.

and the law expressly requires the justice to adjudge a forfeiture, if the owner fail to appear. Upon the return of the warrant, if the owner or keeper do appear, and the justice is of opinion that the liquors have been kept or deposited for sale, contrary to the provisions of the act, he is to adjudge a forfeiture, cause them to be destroyed, and inflict a fine of twenty dollars; or, if this fine be not paid, imprisonment for thirty days, upon such owner or keeper. An exception is made in favor of imported liquors, contained in their original packages; but the burden of proof is put upon the party appearing, to make out this defence. If the person claiming the liquors shall appeal to the court of common pleas, he is required to enter into a recognizance, in a sum not less than two hundred dollars, with good and sufficient sureties, conditioned, among other things, that he will pay all fines and costs that may be awarded against him; and if the final decision shall be against the appellant, that such liquors were intended by him for sale, contrary to the provisions of the act, and the quantity seized exceed five gallons, he is to be adjudged "a common seller of intoxicating liquors," and punished as such, by a fine of one hundred dollars; or, in default of its payment, by imprisonment for sixty days; and he is also subjected to increased penalties on a second conviction.

On reviewing these proceedings, it will be seen that, in order to obtain a trial by jury, the party must give security, in a sum not less than two hundred dollars, with two sufficient sureties, to pay all fines and costs which may be adjudged against him; and must subject himself to the hazard of having the fine, inflicted by the justice of the peace, increased fivefold, if the quantity of liquor seized should exceed, as in this case it did exceed, five gallons. To require security for the payment of the penalty and costs, as a condition for having a trial, so far as I am informed, is a novelty in criminal jurisprudence; and, in my opinion, it is not only essentially unjust, but in conflict with that clause of the constitution which secures the accused from being deprived of his life, liberty, or property, unless by the judgment of his peers, or the law of the land. Natural right requires that no man should be punished for an offence, until he has had a trial, and been proved to be guilty; and a law which should provide for the infliction of punishment, upon a mere accusation, without any trial, if the accused should fail to furnish two sureties to pay the penalty which might, after the trial, be adjudged against him, would be viewed, by all just minds, as tyrannical; for it would treat the innocent, who are unable to furnish the required security, as if they were guilty, and would punish them, while still presumed innocent, for their poverty, or want of friends. And it is equally clear, that such a law would not be "the law of the land," within the

settled meaning of that important clause in the constitution. Certainly this does not mean any act which the assembly may choose to pass. If it did, the legislative will could inflict a forfeiture of life, liberty, or property, without a trial. The exposition of these words, as they stand in Magna Charta, as well as in the American constitutions, has been, that they require "due process of law;" and in this is necessarily implied and included the right to answer to and contest the charge, and the consequent right to be discharged from it, unless it is proved. Lord Coke, giving the interpretation of these words in Magna Charta (2 Inst. 50, 51), says, they mean due process of law, in which is included presentment or indictment, and being brought in to answer thereto. And the jurists of our country have not relaxed this interpretation. Hoke v. Henderson, 4 Dev. 15; Taylor v. Porter, 4 Hill, 146, 147; 3 Story, Const. 661; 2 Kent, Comm. 13, note.

It follows, that a law, which should preclude the accused from answering to and contesting the charge, unless he should first give security, in the sum of two hundred dollars, with two sufficient sureties, to pay all fines and costs, and which should condemn him to fine and forfeiture, unheard, if he failed to comply with this requisition, would deprive him of his liberty or property, not by the law of the land, but by an arbitrary and unconstitutional exertion of the legislative power. And if this would be the character of a law, which made the right to any trial dependent on such a condition, can it be maintained, that to prescribe such a condition, does not impair the right to a trial by jury. In such a case, the appeal has annulled the sentence of the justice of the peace. The accused is presumed to be innocent. He has had no such trial as he has a right to have. He now claims this particular kind of trial, as the prescribed constitutional means of determining whether he is to be punished. A condition, which would impair his right to any trial, if prescribed as the condition of his having any, impairs his right to this trial, if prescribed as a condition for his having it.

The 14th section of the 1st article of this constitution declares:—"Every man being presumed innocent, until he is pronounced guilty by the law, no act of severity, which is not necessary to secure an accused person, shall be permitted." Undoubtedly, this clause has reference chiefly to acts of severity against the person of the accused. But it not only contains the great principle of the presumption of innocence, until the accusation is proved, but points out the security of the person, that he may be tried, as the only just or admissible reason for exercising any control over one still presumed to be innocent. And in my judgment, any law which disregards these principles, and introduces a new object, namely, the security of the payment of the fine and costs, and denies a

trial by jury, unless the security is given, does not allow the right to such a trial to remain unimpaired. If this were not so, there would be no limit to legislative control over this right; for if one onerous condition may be imposed, so may any number, until the right becomes so difficult of attainment, that it ceases to be a common right, and can be enjoyed only by a few. I find it equally difficult to reconcile the increase of penalties, upon a conviction after an appeal, with the unimpaired enjoyment of the right of trial by jury. The act inflicts a fine of twenty dollars, if a conviction takes place before a justice of the peace. It must be that the legislature considered this the appropriate penalty for the offence. Certainly it cannot be said that the offence is aggravated, by the accused having claimed a trial by jury. For what, then, is the additional penalty of eighty dollars, or the additional imprisonment for thirty days, inflicted? If the offence remains the same, and the offender has done nothing but claim an appeal, in order to have his case tried by a jury, must not these additional penalties be founded on the exercise of that right? Here, also, it is manifest that this right is not secured by the constitution; but is wholly under the control of the legislative power, if it can annex penalties to the exercise of the right.

These proceedings are clearly criminal in their nature. Their object is to inflict upon the person fine or imprisonment, and at the same time to adjudicate a forfeiture of the liquors. The process, and the judicial action under it, are directed both against the offender and his property. It is true the warrant does not require the officer to arrest any one, but only to seize and hold the property, and summon the owner or keeper, if known to him. But the arrest of property, to compel an appearance, is a known and effectual mode of proceeding against the owner of that property. Indeed, all mesne process, both civil and criminal, which results in giving bail for an appearance, is only a mode of binding a certain amount of property to a forfeiture on non-appearance. And when this law provides that the property is to be seized and detained, and adjudged forfeited. if the owner or keeper fail to appear, and if he do appear, that he shall be fined or imprisoned, if found guilty, it has brought into action a criminal process both against the owner and his property. That spirituous or intoxicating liquors are still property, notwithstanding this act, is certain. The act nowhere declares the contrary; and it recognizes them as property, by providing for the appointment of public agents, to buy and sell them, by expressly declaring that they may lawfully be held by chemists and others, and by not interfering with the title to them, under any circumstances, unless they are held, in some town in the state, for sale within that town. Indeed, the very terms employed to describe the judgment to be

entered by the justice of the peace, "they shall be adjudged forfeited," "and the owner shall pay a fine," &c., are applicable only to property, and clearly imply that there is deemed to be some title to be devested, something for such a judgment to operate upon, and something which, until forfeiture, had an owner. This being a criminal prosecution, directed against person and property, having for its end both fine or imprisonment and forfeiture, it becomes necessary to compare the law, authorizing this prosecution, with another requirement of the 10th section of the 1st article of the constitution of the state, already quoted. The accused is "to be informed of the nature and cause of the accusation." This act does not require that any particular person should be charged; and in the case at bar, the complaint charges no one. It merely sets forth that the complainants have reason to believe, and do believe, that spirituous or intoxicating liquors are kept or deposited in several buildings which are mentioned, or in the yards or cellars thereto belonging, and are intended for sale in the city of Providence, by a person not authorized to sell the same. Whether these particular liquors, or others seized at the same time, and claimed by different persons, were referred to; whether the plaintiff, who owned these liquors, or some other person, in whose care they were left, had this unlawful intent, is not stated or shown by the complaint. There being no accusation whatever against the plaintiff, how can he be said to be informed of its nature and cause. When the constitution requires that the accused should be informed of the nature and cause of the accusation, it clearly implies that there is to be an accusation against him. An accusation against another, or against no one in particular, is not such an accusation as will satisfy this clause of the constitution. It stands in the same article which demands a conformity to "the law of the land," that is, due process of law. and should be interpreted as requiring that certainty which the common law has deemed essential to the protection of the accused. Certainty, in respect to the person charged. is not the least essential particular to which the constitutional requisition extends. Sanford v. Nichols, 13 Mass. 286; Reed v. Rice, 2 J. J. Marsh. 45; Com. v. Davis, 11 Pick. 432; Com. v. Phillips, 16 Pick. 211. If the complaint had charged the owner of particular liquors, so described as to be capable of being distinguished from all others, with an unlawful attempt to sell them, perhaps this might be sufficient; though, when it is borne in mind that this is a proceeding in personam, as well as in rem, such a mode of presentment would be novel, especially as applied to a case in which the unlawful intent of a particular person is the substance of the offence. But here it does not appear the owner was intended to be charged. The complaint alleges only that some person has

this unlawful intent; but whether the owner, or some person to whom he had confided the possession, or a mere wrongdoer, who had possession, does not appear. Nor is there any description of the property, capable of distinguishing it from all other of like kind, and, consequently, of identifying the owner, if he should appear, as the person intended to be charged. The only description given is, that the property is liquors, spirituous or intoxicating; and that they are in one or all of three storehouses mentioned in the complaint, or in the cellars or yards belonging thereto. If it should turn out, as it did in this case, that more than one person had, or claimed to have, such liquors, in one of those places, how is the accusation to be treated, and which claimant is to be selected as the one to be tried, and who is to make the selection; or, under a complaint charging a person, to the complainants unknown, with a criminal intent, is a trial to be had of all claimants who may appear, however numerous they may be? The complainants having sworn that some one person is believed by them to be guilty, is the justice to go on and try all comers, till he finds some one guilty, and there stop, and discharge the rest, or proceed and convict two or three, or any other number, if he find evidence enough, under a complaint against one only?

But this is by no means the only difficulty. The accused has an absolute right to a trial by jury. He has, also, a right to be so charged, that when that trial takes place, the jury shall pass upon the whole charge, so far as it involves matter of fact, and under the direction of the court, shall apply the law to all mixed questions of law and fact. Now, if the owner of liquors seized, reach a jury trial by an appeal, and the quantity of liquors seized exceed five gallons, the court is required to adjudge him "a common seller of intoxicating liquors," and he is to be punished accordingly. But the complaint does not charge him with being such a common seller, nor with having and intending to sell, over five gallons; and no such fact is required to be, or can be put to the jury, to be tried. Yet, upon this fact, the judgment that he is guilty of a distinct offence, and the higher punishment appropriate to that offence, are rested. So that he is to be convicted of this higher offence without being charged with it, and without a trial by jury, of one of the facts essential to constitute it. It is urged, however, that nevertheless, this may be a valid proceeding against the property, although the court could not thus convict the person. If this were simply a proceeding to forfeit property, it would nevertheless, be a criminal prosecution within the meaning of this clause in the constitution; and the owner would be entitled to a trial by jury, and to have the accusation, relied upon to work the forfeiture, set forth substantially, in accordance with the rules of the common law, so that he could discern its nature and cause.

And I should more than doubt, whether a complaint stating only, that some liquors were in one or all of several buildings mentioned, and were intended by some person to be sold, would be sufficient. Suppose it is all admitted, non constat, that the liquors seized are those referred to, or that their owner, or any person to whom he had intrusted the possession, had any unlawful intent. It may be so, but it also may not be so; and a criminal charge, not only according to the rules of common law, but from the nature of the thing, should at least contain enough to show, that if true, the appropriate punishment should be inflicted. Yet here, all that the complaint avers may be true, and yet the property of the plaintiff never held for sale in Providence, by him or his agent. It is to be borne in mind that this complaint is not merely the ground for issuing a warrant of search, and for the arrest and detention of the property, but it is the sole basis for judicial action afterwards. It is the only presentment of the offence; and, therefore, if the proceeding was to result only in a forfeiture of property, I should still consider the complaint as so deficient in the requisite certainty, as to be bad for that cause. But it is not possible thus to separate the proceedings, under this act, against the property, from the proceedings against the person, on appeal. The court is to order the property to be destroyed, only in the event, "if the final decision shall be against the appellant." If there is no accusation, upon which the appellant can lawfully be tried, there can be no final decision against him, and the property cannot be destroyed.

When this writ of replevin was served, this property was held under an order of forfeiture, which was invalid, for two reasons: First, because there was no sufficient complaint; and secondly, because the plaintiff was deprived of his property by a criminal prosecution, in which he neither had, nor could have, a trial by jury, without submitting to conditions, which the legislature had no constitutional power to impose. In general, a judicial act is not void, but voidable only; and, therefore, it is necessary to consider whether this order comes within that class of acts which are only voidable by some appropriate legal proceeding in the same case, or was absolutely void. An order made by a justice of the peace, concerning a matter not within his jurisdiction, is void; and he, and all ministerial officers who execute that order, are trespassers. Wise v. Withers, 3 Cranch [7 U. S.] 331; Cowp. 140; 7 Barn. & C. 536; 5 Maule & S. 314; 11 Conn. 95; 7 Wend. 200. Such an order confers no authority to detain property, and is not a defence to an action of replevin by its owner. The inquiry, therefore, is, whether the magistrate had jurisdiction to make this order; and I am of opinion that he had not.

It has already been stated that this is a criminal prosecution. So far as this law at-

tempts to confer jurisdiction upon justices of the peace to inflict fine and forfeiture, a trial by jury being at the same time denied, unless the accused should comply with conditions to which he is not bound to submit, it is in conflict with the constitution, and is wholly inoperative. The legislature may confer on justices of the peace power to punish offences; but it must be so done as to preserve, unimpaired, the right of trial by jury; otherwise, the whole proceeding is void, ab initio. The constitution declares, that, "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury." The act, now under consideration, provides that the right shall not be enjoyed in all criminal prosecutions; but, under this act, only in those cases in which security shall be given to pay all fines and costs. It is not practicable to consider the grant of jurisdiction to the justice valid, and the condition imposed on the exercise of the right of appeal void; because an appeal, in a criminal case, can exist only by force of a statute; and if the statute has given it only on certain conditions, the magistrate must execute his judgment, and cannot allow the appeal; and the appellate court cannot entertain it, unless those conditions are complied with. In substance, it is a grant of final jurisdiction to a justice of the peace, in all cases in which such security is not given; and this is such a criminal jurisdiction as cannot be created under the constitution of Rhode Island.

I am of opinion, also, that, the complaint in this case was so defective, as to render all proceedings under it void. Here, also, the rule is, that if the process, though erroneous, is voidable only, it must be avoided by some proper legal proceedings; and while it stands, they who act under it are not trespassers. But this is not an authorized legal proceeding, in which an error has occurred. The complaint is in the form required by the act. The difficulty is, that the act has authorized a criminal prosecution, founded on a complaint which is not "due process of law." This act, so far as it authorizes such a prosecution, being in conflict with the constitution, is inoperative, and it seems to be a necessary conclusion, that it confers no jurisdiction to receive and proceed upon such a complaint. This may be illustrated, by supposing a law authorizing a criminal prosecution without any complaint. In such case, there could be no doubt that the whole proceeding would be absolutely void. I think it would be difficult to make a sound distinction between no complaint, and one which does not satisfy this requisition of the constitution, which, therefore, is no legal complaint, and is not "due process of law," within the definition by Lord Coke, of the words "law of the land," in Magna Charta. It has long been settled (Martin v. Marshal, Hob. 63) that the magistrate must not only have a jurisdiction of the subject-matter, but of the process. And if the law, conferring jurisdiction, is fatally defective, as respects the process, which is the foundation of the jurisdiction, the jurisdiction does not exist. Grumon v. Raymond, 1 Conn. 40.

For both these reasons, I am of opinion that the proceedings before the court of magistrates were inoperative to divest the owner of this property of his legal rights; and, consequently, neither the taking nor detention are justified by the avowry.

Several other questions have been argued at the bar in this case; but I do not find it necessary to consider them. They involve important rights under the constitution and laws of the state. If any case should come here for judgment, requiring their decision, I shall pass upon them. This case is determined without doing so. My opinion is, that there should be a judgment for the plaintiff, upon the demurrer; and if he claims damages for the taking and detention, their amount must be assessed by a jury.

PITMAN, District Judge, said he fully concurred in the opinion of Mr. Justice CURTIS, and added: The law in question was, no doubt, intended by many good men to promote the welfare of the community; but if this good cannot be accomplished, except by the sacrifice of those principles which are so essential to secure our rights and liberties, we cannot hope for security, because we are under a popular government. The despotism of numbers is quite as much to be dreaded as the despotism of one. It is not lawful to do evil, that good may come; and (if I may be here allowed to say so) it is not expedient. If good men disregard the vital principles of the constitution, how can they expect that bad men are to be controlled by law.

There are other features of this law, which struck me, at the hearing, as a violation of the constitutional rights of the citizen. The right of trial by jury, affected as it is by the conditions and obstructions which are annexed to the claim of this right by other sections, by the 9th section is rendered of less value to the accused, not only by declaring that no person engaged in the traffic of selling liquors, contrary to this act, "shall be competent to sit upon any jury in any case arising under this act," but by the mode of ascertaining the fact. The constitution provides, that "no man, in a court of common law, shall be compelled to give evidence criminating himself." Article 1, § 13.

This law authorizes the court to inquire of the juror who may be challenged, on this account: it is true, the law says "he may decline to answer," but what then? Is the fact to be proved by other evidence? No; his silence is considered as sufficient proof, and he is excluded accordingly. He is, therefore, compelled to answer, if he does not wish to be excluded, as unworthy to sit as a juror, or does not wish to be considered as concerned in a traffic which may be considered as infamous. The maxim of the common

law, recognized by the constitution, is, that every man is to be presumed innocent, until he is proved to be guilty.

The whole spirit of this law appears to me, to be at variance with the rights of property, as well as person. The legislature has no right, by an act, to confiscate the property of the citizen; it may be forfeited for a violation of law, but this must be done, without affecting the rights of the owner thereof to a jury trial. But the object of this law does not appear to be so much "for the suppression of drinking-houses and tippling-shops," as its title would seem to import. as for the destruction of intoxicating liquors—because they may be injuries to the community. But those who drafted the law, no doubt knew, that this could not be done, without making compensation to the owner thereof, as the constitution of Rhode Island, and most of the other state constitutions provide, that private property cannot be taken for public use, without just compensation. To evade this provision, it is made criminal to have this kind of property, not merely in "drinking-houses and tippling-shops," but "in any store, shop, warehouse, or other building," &c., (section 11,) with intent to sell the same; and by what manner of process, and how it is to be destroyed, we have seen,—evidently, with a view to evade the trial by jury. Such an evasion is as illegal as a denial of this right; and if such a law is to be justified, it can only be by adding another provision, by which the owner shall be compensated for the destruction of his property.

Lord Coke, in his commentary upon the 29th chapter of Magna Charta, says (2 Inst. 48), "5, No man destroyed,"&c. "Every oppression against law, by color of any usurped authority, is a kind of destruction, for, 'quando aliquid prohibetur, prohibetur et omne, per quod devenitur ad illud;' and it is the worst oppression that is done by color of justice." In page 51, he says: "Against this ancient and fundamental law, (referring to Magna Charta,) and in the face thereof, I find an act of parliament made, (11 Hen. VII. c. 3.) that as well justices of assize as justices of peace, (without any finding or presentment by the verdict of twelve men,) upon a bare information for the king, before them made, should have full power and authority, by their discretions, to hear and determine all offences and contempts committed, or done, by any person or persons, against the form, ordinance, and effect of any statute made, and not repealed, &c. By color of which act shaking this fundamental law, it is not credible what horrible oppressions, and exactions, to the undoing of infinite numbers of people, were committed by Sir Richard Empson, Knight, and Edm. Dudley, being justices of peace throughout England; and upon this unjust and injurious act, (as commonly in like cases it falleth out,) a new office was erected, and they made masters of the king's forfeitures." "But at the parliament holden in the first year of Henry VIII., this act of 11 Henry VII., is recited and made void and repealed, and the reason thereof is yielded, for that by force of the said act it was manifestly known, that many sinister, and crafty, feigned, and forged informations, had been pursued against divers of the king's subjects, to their great damage and wrongful vexation; and the ill-success hereof. and the fearful ends of these two oppressors should deter others from committing the like, and should admonish parliaments, that instead of this ordinary and precious trial per legem terrae, they bring not in absolute and partial trials by discretion."

Judgment was then entered for the plaintiff, by order of court, with one dollar damages, by agreement of parties.

[For another case involving the constitutionality of a similar act of the legislature, see Greene v. James, Case No. 5,766.]