### CHARLES W. CLAYTON v. WILLIAM P. CLARK.

1. In an action brought in the District Court, where the matter in dispute is above the sum of $200, a demand for a jury, made by the defendant at the proper time, deprives the court of jurisdiction to try the cause otherwise than by a jury.
2. Such a demand gives the defendant the right to a trial by jury without prepayment of costs, or to have the action against him dismissed.

On *certiorari.*

Argued at February Term, 1893, before Justices VAN SYCKEL and GARRISON.

For the prosecutor, *Frank E. Bradner.*

For the defendant, *Samuel Kalisch.*

The opinion of the court was delivered by

GARRISON, J. The question to be decided is whether the judge of a District Court has jurisdiction to try the merits of a case where the matter in dispute exceeds the sum of $200, when the defendant has appeared at the proper time and demanded a jury. In the case before us, the *venire* was withheld solely because the defendant refused to advance the fees and costs incident thereto, so that the precise point raised is whether the defendant's right to a trial by jury was lawfully made to depend upon the prepayment by him of the expenses of the *venire*.

The question whether the legislature, by increasing the jurisdiction of inferior tribunals, may lawfully take away the right of trial by a common law jury, or may hamper it with conditions that affect its usefulness, is evidently one of large importance in a constitutional point of view. The constitutional requirement that "the right to a trial by jury shall remain inviolate," guarantees the opportunity to submit common law rights to a tribunal that shall possess the attributes of the historical jury as it existed at the time of the adoption of the organic law. The language of that instrument, however, with respect to the right to this mode of trial, is that it shall remain inviolate, not that it shall be unalterable; so that the limits of legislative action are not so circumscribed as to preclude the exercise of some power over the jurisdiction and procedure of inferior courts, although the existence of even such a power was doubted by Elmer, J., in *State* v. *Zeigler,* 3 *Vroom* 262. Legislative action of this kind has received judicial sanction in many of the courts of this country. *Beers* v. *Beers,* 4 *Conn.* 535; *Curtis* v. *Gill,* 34 *Id.* 54; *Guile* v. *Brown,* 38 *Id.* 237; *Hapgood* v. *Doherty,* 74 *Mass.* 373; *State* v. *Allen,* 45 *Mo. App.* 551; *Dawson* v. *Horan,* 51 *Barb.* 459; *Knight* v. *Campbell,* 62 *Id.* 16; *Emerick* v. *Harris,* 1 *Binn.* 416; *Biddle* v. *Commonwealth,* 13 *Serg. & R.* 410; *Norton* v. *McLeary,* 8 *Ohio, N. S.,* 205; *Vanzant* v. *Waddell,* 2 *Yerg.* 260; *Morford* v. *Barnes,* 8 *Id.* 446; *Keddie* v. *Moore,* 2 *Murph.* 45.

The narrower question argued before us, viz., whether the legislature may constitutionally require that the party demanding the jury shall advance the expenses of the *venire*, has likewise been affirmed in several jurisdictions (*Randall* v. *Kehlor*, 60 *Me.* 43 ; *In re Marron*, 60 *Vt.* 199 ; *Conners* v. *Burlington Railroad*, 74 *Iowa* 383 ; *People* v. *Hoffman*, 3 *Mich.* 248 ; *Adams* v. *Corriston*, 7 *Minn.* 456 ; *Venine* v. *Archibald*, 3 *Col.* 163 ; *Conneau* v. *Geis*, 73 *Cal.* 176), and questioned in *Greene* v. *Briggs*, 1 *Curt.* 311 ; *Copp* v. *Henniker*, 55 *N. H.* 179.

The decision of the present case does not, however, call for the expression of an opinion upon either of these questions ; still less does it warrant the adoption of any rule limiting legislative control over this subject, for the reason that there is in this state no legislation of the character criticised in the cases cited. Our statute books fail to show a vestige of authority for the proposition that a defendant who has been sued in a District Court for a sum in excess of $200, is required to prepay the expenses of the *venire*, which, upon his demand, the judge is directed to issue. *Rev. Sup., p.* 230, § 31.

If such a requirement exists, it must be by force of statutory provision. The act under which these suits are brought was approved March 27th, 1882, and relates to "the jurisdiction and practice of District Courts in this state." *Pamph. L., p.* 195. It is general in terms, and its effect is to extend the jurisdiction of these statutory courts to suits in which the matter in dispute does not exceed $300. It likewise transfers to the District Courts, in such cases, some of the practice and most of the fee bill of the Circuit and Common Pleas Courts. Among other things, it provides that when the matter in dispute is above the sum of $200, the *venire* shall issue to the sheriff, and that the fee of each juror shall be fifty cents per day, "to be paid as now provided by law in other cases tried by jury in said courts." The provisions for the payment of juries in the act concerning District Courts relate solely to actions of *debt* and apply exclusively to

the payment of costs by *plaintiffs after* trial; hence, afford no support whatsoever for the proposition that, in an action of *trespass* the *defendant* must pay the cost of the jury *before* trial. Another section in the act, providing for the payment of costs, is in these words : " That no constable or other officer authorized to serve a subpœna, summons or other *mesne* process issued out of any District Court shall be required to serve such process until his legal fees and mileage for so doing shall have been paid to the officer of whom such service is required." This language, while it imposes no duty upon a defendant to advance the expenses of a jury, compels plaintiffs to make prepayment for process, and to this extent may serve as a guide to judicial action in subsequent stages of the cause.

With respect to the expenses of these statutory courts it will be observed that the plaintiff and defendant stand in totally different attitudes. The plaintiff chooses the tribunal in which he will bring his suit. When the amount of his claim is above $200 he has from which to select the Supreme Court, the Circuit Court and the Court of Common Pleas, in all of which a common law trial by jury is provided at public expense. If, with these courts open to him, the plaintiff elects to take the defendant before a statutory tribunal, where either party may demand a jury, it is doubtful if he can be heard to complain of any reasonable regulation rendered necessary by the legislative frame of the tribunal selected. With the defendant it is totally different. The legislature has made the right to a jury absolute if demanded at the proper time. The defendant has had no voice in choosing the forum, hence has submitted himself to no implied conditions arising from its construction. He is there *in invitum,* with the right to question the constitutionality of the procedure in all its steps, and to ignore utterly all innovations upon his common law rights for which express legislative authority does not exist. No custom, however reasonable, and no rule of court, however adopted, can deprive him of a constitutional privilege that is unconditionally incorporated in the legislative act to which

the tribunal owes its existence. When, therefore, the demand of the defendant for a *venire* is met by a counter demand for indemnity, the plaintiff must either furnish the indemnity or have his action dismissed. With this the defendant has nothing whatsoever to do—under the statute his demand for a jury, if made at the proper time, deprives the court of jurisdiction to try the cause otherwise than by a jury. The issue must either be tried in this manner or not at all. This result rests in statutory interpretation so plain that it has not been deemed necessary to inquire whether it is within the power of the legislature to annex a condition of prepayment to a trial by jury in a tribunal from which it had taken away all provisions for retrial upon appeal. For the same reason no reference is made to the practice said to exist in justices' courts, by which such costs are demanded. Such practice could have no pertinence in a constitutional sense save as it existed prior to 1844, when the constitution was adopted; and it is extremely doubtful if at that period such a practice obtained in the court for the trial of small causes as a recognized custom. No reference to such a course is to be found in the reported cases or in the histories of the small cause court. On the contrary, in the edition of *Pennington* edited by Harrison, and published in 1843, the year before the adoption of the constitution, the author inveighs bitterly against the provision of the act that required the defendant to pay the costs of the jury when the case went against him—characterizing it as "peculiarly hard on the defendant." *Pen. Tr.* 33.

It is not likely, if there was at that time an established practice by which the defendant was subjected to the vastly greater hardship of advancing the jury fees before trial, it would have been overlooked by the zealous author of that treatise.

In the case before us, when the defendant demanded a jury, it became the duty of the judge either to issue the *venire* or to dismiss the case; he had no authority to require of the defendant any condition not prescribed by the statute, nor any jurisdiction "to inquire into the merits of the cause" himself.

The record shows that after the refusal of the judge to issue the *venire* the defendant moved that the case be dismissed. The judgment for the plaintiff subsequently rendered was a nullity, and, upon a direct attack, must be set aside.