ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY v.

MCNAMARE.

Opinion delivered June 28, 1909.

1. VENUE—RIGHT TO CHANGE OF.—Under Kirby's Digest, § 7998, providing that "where the plaintiff shall have instituted suit in a county other than that of his residence, or of the county where the occurrence of which he complains took place, unless compelled to do so to get service on the defendant, the defendant shall have the right to a change of venue upon presentation of his petition duly verified," a defendant in a civil case is entitled as matter of right to a change of venue where his application therefor, duly verified, shows that the suit was not brought either in the county in which plaintiff resided at the time the suit was commenced or in the county in which the occurrence complained of took place, and it is unnecessary that such application should be supported by the affidavits of two credible witnesses, as required in other cases. (Page 518.)

2. CONFLICT OF LAWS—EXTRATERRITORIAL EFFECT OF REMEDIAL STATUTE.—Under Rev. Stat. Mo., § 2865, providing for a survival of a cause of action "whenever the death of a person shall be caused by a wrongful act, neglect or default of another," a cause of action originating in that State may be enforced in the courts of this State. (Page 521.)

3. MASTER AND SERVANT—VALIDITY OF REGULATION.—The act of Missouri of February 28, 1907 (Laws Mo. 1907, p. 181), requiring all railroads "to fill or block all switches, frogs or guard rails," etc., is not unconstitutional in providing that contributory negligence on the employee's part shall not be a defense. (Page 523.)

4. SAME—VALIDITY OF REGULATION OF INTERSTATE COMMERCE.—The act of Missouri of February 28, 1907 (Laws Mo. 1907, p. 181), requiring

railroads to fill or block all switches, frogs or guard rails, etc., is not, in so far as it relates to interstate commerce, in conflict with any act of Congress on that subject, and is valid until Congress legislates on the same subject. (Page 524.)

Appeal from Marion Circuit Court; *Brice B. Hudgins,* Judge; reversed.

### STATEMENT BY THE COURT.

This is an action by Ruth E. McNamare, widow of F. Mc-Namare, against the St. Louis, Iron Mountain & Southern Railway Company to recover damages for alleged negligence in killing her husband while in the employment of said railway company.

The material facts upon which the suit is based are as follows: On the 18th day of February, 1908, plaintiff's husband was in the employment of the defendant as a brakeman on one of its freight trains, running from Cotter, Arkansas, to Crane, Missouri. On said date one of the defendant's freight trains, upon which her said husband was a brakeman, was running north on defendant's railroad at or near Melva, Missouri, and the conductor ordered her husband, who was in the rear of said train, to walk over the cars and notify the engineer to head in on a switch in the yards at Melva for the purpose of allowing a passenger train to pass. In obedience to the order, McNamare went forward and notified the engineer. The engineer, instead of heading into the switch, went to the other end of it for the purpose of backing into it. It was the duty of McNamare to assist in operating the switch. For that purpose, as the engine approached the switch stand, he jumped off of it. His foot was caught in an unblocked frog or guard rail, and was held so firmly that he could not unloose it so as to get out of the way of the train. The train ran over him, severing his legs from his body, which resulted in his death. In getting off of the engine he jumped on the side next to the switch, instead of on the opposite side, as he was required to do by the rules of the company.

There was a jury trial and verdict for the plaintiff in the sum of $7,500.

From the judgment entered on the verdict the defendant has appealed.

*E. B. Kinsworthy, S. D. Campbell* and *Thos. T. Dickinson,* for appellants.

1. The statutes of Missouri are penal statutes, and are so dissimilar to the statutes of Arkansas relating to wrongful death and survival of action, and so against the policy of our laws, that this action cannot be maintained in our courts. 60 Pac. 747; 84 Mo. 679; 16 S. W. 487; 174 Mo. 225; 52 Fed. 371; 18 Kans. 46; 98 Mass. 85; 46 Fed. 269; 143 Mass. 301; 67 Vt. 76; 25 Oh. St. 667; 9 S. W. 540; 64 Oh. St. 133; 72 Md. 144; 5 L. R. A. 364; § § 2864-5 Rev. St. of Mo.; Laws of Mo., 1905, p. 135; *Id.* Laws 1907, p. 181, 252; Kirby's Dig., § § 6289, 6290; 64 Oh. St. 133; 7 Am. Dec. 467; 69 Id. 740; 105 Am. St. 820; 14 *Id.* 344; 71 Ark. 258; 32 *Id.* 120; 70 *Id.* 494.

2. The statutes of Missouri are contrary to the constitutions of Missouri and the United States, and "the public policy" of the United States as declared by Congress and the judicial department. Const. of Mo., art 2, § § 10, 30; *Id.* art. 4, § 53; 111 S. W. 500; Const. U. S., 5th amend., § 1, art 1, § § 8, 10. Congress has entered the field of exclusive jurisdiction and legislation as to interstate commerce matters, and state statutes are void. 6 Fed. Stat. An. 752-756; *Ib.* 1907 Supp., pp. 68-69, Employers Liability Act, etc.; 117 N. W. 686; 111 S. W. 500; 207 U. S. 463.

3. Defendant was entitled to a change of venue. Kirby's Dig., § § 7096-8; 81 Ark. 499.

4. The place where the injury occurred was not a *yard,* divisional or terminal point, and the act did not require blocked or filled frogs therein. 110 Mo. 286; 101 Mich. 599; 152 U. S. 145, 150; 57 Ark. 377; 149 Ind. 172; 57 Fed. 145; 110 Mo. 317.

5. McNamare was injured through his own contributory negligence; he assumed the risk and violated the rules of the company with which he was familiar, hence there can be no recovery. 41 Ark. 542; 46 *Id.* 569; 61 *Id.* 549; 57 *Id.* 461; 63 *Id.* 427; 106 Mo. 74; 110 *Id.* 395.

6. The courts of this State are without jurisdiction to render judgment for death occurring in Missouri. Authorities *supra;* 84 Mo. 679; 54 Am. Rep. 105; 16 S. W. 487; 97 Am. St. 553; 52 Fed. 371; 79 Ark. 62; 26 Am. Rep. 742; 18 Kans. 46; 98 Mass. 85; 60 Pac. 747; 174 Mo. 225; 215 Ill.

47; 46 Fed. 268; 67 Vt. 76; 147 Mass. 301; 20 Am. St. 461; 8,}
*Id.* 739; 5 L. R. A. 364; 32 Ark. 120; 70 *Id.* 494.

*Jones & Seawel* and *Hamlin & Seawel,* for appellee.

1.   The right of action is given by section 2865, and the
measure of damages is governed by section 2866, as amended by
act of 1907, Rev. St. of Mo., 1905, p. 155, etc.: 67 Mo. 272; 78
*Id.* 195; 69 *Id.* 536; 98 *Id.* 74; 155 *Id.* 610; 173 *Id.* 654; 91 *Id.*
509; 97 *Id.* 253; 106 *Id.* 74; 109 *Id.* 518; 90 *Id.* 403; 94 *Id.* 286.
The damages are compensatory and not penal.   Cases *supra* and
75 Mo. App. 535; 80 *Id.* 93; 178 Mo. 528; 94 *Id.* 286.   This is
the doctrine held in Arkansas.   62 Ark. 254; 76 *Id.* 362; 67 *Id.*
295; 71 *Id.* 445; 50 *Id.* 155; 87 Ark. 65; 103 U. S. 11; Minor,
Conflict of Laws (1901), § 200; 56 L. R. A. 193 and notes.

2.   The statute is constitutional, and is not a regulation of
interstate commerce.   The United States "Employers Liability
Act" was not in force when the injury occurred.   207 U. S.
463; 77 Ark. 483; 86 Ark. 412; 128 U. S. 96; 86 Ark. 246; 129
U. S. 34; 68 L. R. A. 168; 169 U. S. 613; 80 Ark. 404; 115 U. S.
463; 26 Cyc. 980-1230.

3.   The petition for change of venue was properly refused.
It was properly supported, and plaintiff was a resident of Marion
County.   54 Ark. 243; 71 *Id.* 180; 76 *Id.* 276; 80 *Id.* 360; 74 *Id.*
172; 83 *Id.* 38; 86 Ark. 357.

4.   It was a question of fact whether or not the place of
accident was a *yard,* and the verdict was conclusive.   78 Ark.
28; 67 *Id.* 426; 65 *Id.* 426; 85 *Id.* 221.   The act requires all
* * * frogs, etc., to be filled or blocked whether in yards or
on their *roads.*

5.   The doctrine of assumed risk and contributory negli-
gence are unavailing under the statute.   122 Mo. App. 227-233;
37 C. C. A. 499; 48 L. R. A. 68; 46 Mo. App. 266; 73 Mo. 219;
112 S. W. 985; 29 Cyc. 622.

Hart, J., (after stating the facts.)   1.   Counsel for appel-
lant assign as error the action of the court in refusing to grant
it a change of venue.   In its petition for a change of venue appel-
lant states "that it verily believes that it cannot obtain a fair
and impartial trial in this, Marion County, on account of the
undue prejudice against the petitioner in said county.   It further
says the plaintiff is not a resident of Marion County, Arkansas,

but is a resident of the State of Missouri; that her cause of action, if any she has, and the occurrence of which she complains did not take place in Marion County, Arkansas, but occurred in the State of Missouri, and plaintiff was not compelled to institute her suit in Marion County in order to get service on the defendant;" and ends with a prayer to grant it an order changing the venue of this case to some other county in the State of Arkansas, against which there was no valid objection, and for all other proper relief.

The facts are that appellee came to Marion County after the suit was brought, a few weeks before the date of the trial, and resided there at the time of the trial.   At the time her husband received the injury complained of, they resided at the town of Cotter, in Baxter County, Arkansas, through which county appellant's line of railroad also extended.   The injury complained of occurred in the State of Missouri.   The action was not commenced in the county of the plaintiff's residence nor in the county where the occurrence she complains of took place, and it was not necessary to bring the suit in Marion County in order to get service on the appellant.   Hence, upon presentation of its petition duly verified, appellant was entitled as a matter of right to a change of venue.

We will quote the two sections of our statutes relative to the question: Section 7996 provides: "Any party to a civil action, trial by jury, may obtain an order for change of venue therein by a motion upon a petition stating that he verily believes that he cannot obtain a fair and impartial trial in said action in the county in which the same is pending on account of the undue influence of his adversary, or of the undue prejudice against the petitioner, or his cause of action, or defense, in such county. The petition shall be signed by the party and verified as pleadings are required to be verified, and shall be supported by affidavits of at least two credible persons to the effect that affiants believe that the statements of the petitioner are true.

Section 7998: "Upon presenting the petition, which may be resisted, and notice to such judge, he may make an order for the change of venue in such action if, in his judgment, it be. necessary to a fair and impartial trial, to a county to which there is no valid objection, which he concludes is most conven-

ient to the parties and their witnesses; provided, that, in case where the plaintiff shall have instituted suit in a county other than that of his residence, or of the county where the occurrence of which he complains took place, unless compelled to do so in order to get service on the defendant, the defendant shall have the right to a change of venue upon presentation of his petition duly verified."

The language, "upon presenting the petition, which may be resisted," plainly contemplates the petition duly verified and the supporting affidavits. This is so for the reason that it provides for a resistance, which could not be done, and which would not be necessary to be done, unless a petition for change of venue duly verified and with supporting affidavits, as required by the statute, had been filed. In short, there would be nothing to resist unless the requirements of section 7996 had been complied with.

The proviso contained in the latter part of section 7998 is a limitation upon the preceding part of the section. Where the conditions contained in the proviso exist, they defeat the operation of the first part of the section. In other words, the proviso conditionally limits the operation of the statute relative to a change of venue. It provides that when the conditions exist the change of venue shall be granted as a matter of right upon presentation of the petition duly verified. If the Legislature had intended that the supporting affidavits should accompany the petition as a prerequisite to the granting of a change of venue, it would have used the language "upon presentation of his petition duly verified together with the supporting affidavits." But the expression of the one excludes the use of the other.

In the case of *St. Louis Southwestern Railway Co.* v. *Furlow,* 81 Ark. at p. 499, the court said: "The statute plainly means that if the plaintiff commences an action in a county other than that of his residence, or other than that of the county in which this occurrence of which he complains took place, unless he is compelled to do so in order to get service on the defendant, the latter shall have the right to a change of venue upon presentation of his petition in proper form, duly verified, containing allegations of the statutory grounds of prejudice or undue influence and supported by the affidavits of two credible witnesses." The use of the words, "and supported by the affidavits of two credible

witnesses," used by the court, was not necessary to a proper determination of the issue under consideration, and the views we have expressed in the present case are in harmony with the rest of the opinion.

2. Appellee alleges in her complaint that she is entitled to maintain this action under section 2864 of the Revised Statutes of Missouri (1899). Counsel for appellant contend that section 2864 is penal in its character, and that the courts of one jurisdiction will not enforce the penal statutes of another. The allegations of the complaint do not state a cause of action under section 2864, but do state a cause of action under section 2865 of the Revised Statutes of Missouri.

"The right of action given in section 2864 is for a death caused by the negligence of the servant operating the defendant's instrument of transportation, whether it be a locomotive, car, train of cars, steamboat, its machinery, stage coach, or other public conveyance, while the right of action given in the two sections next following is for a death caused by the negligence of the defendant, which may mean his own negligence, as for instance, in furnishing an unsafe vehicle, or it may mean his negligence through his servant in some particular other than the particular specified in section 2864, for which, if the person injured had not died, he would have had a cause of action." *Casey* v. *Transit Co.*, 205 Mo. 721; *Crohn* v. *Kansas City Home Telephone Co.* (Mo. App.), 109 S. W. 1068.

The complaint in this case alleges that the death of McNamare was caused by the negligence of appellant in failing to block its frogs and guard rails as required by the act approved February 28, 1907. See Laws of Missouri, 1907, p. 181. Hence it states a cause of action under section 2865, and not under 2864, of the Missouri Revised Statutes.

Section 2865 does not create a new cause of action, but simply transmits one that theretofore existed, and would have ceased to exist upon the death of the injured party but for its provisions. *Strottman* v. *St. Louis, I. M. & S. Ry. Co.*, 211 Mo. 227.

Section 2865, Revised Statutes of Missouri, 1899, is as follows: "Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled

the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured."

It will be seen that the recovery permitted by this statute, giving a right of action for death by wrongful act, is not a penalty inflicted by way of punishment, but is merely compensatory for the damages sustained by the widow to whom under the Missouri statutes the right of action was transmitted on the death of her husband.

It is well settled that an action under such statutes may be maintained in another State having a statute substantially similar in import and character. *St. Louis, I. M. & S. Ry. Co.* v. *Haist,* 71 Ark. 258, and numerous cases cited in note to the case of *Raisor* v. *Chicago & Alton Ry. Co.,* on page 806 of 2 Am. & Eng. Ann. Cases. Counsel for appellant urges upon us that the statutes are not substantially similar in their character. As we have already shown, the statute of Missouri under which the suit was brought is similar to ours in that it is not a suit for a penalty, but for damages as compensation; and also that it does not create a new cause of action, but simply provides for the survival of the cause of action where death ensues. There is no objection that the right of action is enforced by the widow as provided by the laws of Missouri, instead of by the personal representative for the benefit of the estate and for the beneficiaries of the deceased, as provided by our statutes. In *Dennick* v. *Railroad Company,* 103 U. S. 11, the United States Supreme Court said of a similar action: "It is indeed a right dependent solely on the statute of the State; but when the act is done for which the law says the person shall be liable, and the action by which the remedy is to be enforced is a personal and not a real action, and is of that character which the law recognizes as transitory and not local, we can not see why the defendant may not be liable in any court to whose jurisdiction he can be subjected by personal process or by voluntary appearance, as was the case here. It is difficult to understand how the nature of the remedy, or the jurisdiction of the courts to enforce it, is in any manner dependent on the question whether it is statutory right or a common-law

right. Whenever, by either the common law or the statute law of a State, a right of action has become fixed and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters and can obtain jurisdiction of the parties." To the same effect see *Boston & M. R. Co.* v. *McDuffey,* 79 Fed. 934. Therefore, we are of the opinion that under the principles above declared the suit can be maintained in this State.

3. It is next contended that the act approved February 28, 1907 (Laws of Missouri, 1907, p. 181), is unconstitutional. The act reads as follows:

"Sec. 1. That all companies or corporations, lessees or other persons owning or operating any railroad or part of railroad in this State are hereby required, on or before the first day of September, nineteen hundred and seven (1907), to adopt, put in use and maintain the best known appliances or inventions to fill or block all switches, frogs and guard rails on their roads, in all yards, divisional and terminal stations, and where trains are made up. to prevent, as far as possible, the feet of employees or other persons from being caught therein. Any company or corporation, lessees or other person, owning or operating any railroad or part of a railroad in this State, who shall fail to do any act or thing in this section required to be done, or shall cause any act or thing not to be done, or shall aid or abet any such omission, shall be deemed guilty of a violation of this law, and shall forfeit and pay the sum of ten ($10.00) dollars for every such offense, and each day shall constitute a separate and distinct offense. At every term of a court of record of this State having criminal jurisdiction, the judge thereof shall direct and charge grand juries to make special inquiry as to violation of this law.

"Sec. 2. When any employee or other person shall be injured, maimed or killed by reason of the noncompliance with the provisions of this act, then in any action for damages which may be instituted against any railroad company, corporation or lessee for such injuring, maiming or killing proof of contributory negligence or carelessness on the part of any employee or other person so injured, maimed or killed shall not relieve such railroad company (corporation) or lessee from liability."

Counsel first urge that the act is unconstitutional because it takes away the defense of contributory negligence from the

railroad company, and thereby deprives it of its property without due process of law. The rule on that subject as laid down by Mr. Elliott is as follows: · "There are many modern statutes requiring the performance of specified acts and denouncing a penalty against persons who fail or refuse to perform the designated acts. In some of the books it is suggested that the doctrine of contributory negligence does not apply where the injury is caused by a violation of the statute. The overwhelming weight of authority is, however, that the doctrine does apply, unless the statute abrogates the rule of the common law. Principle and authority, as we believe, require the conclusion that, although the· violation of a statute may give a right of action to one who is injured thereby, it does not, unless expressly or by necessary implication so declared, give a right of action to one who is himself guilty of contributory negligence." 3 Elliott on Railroads, § 1315. See, also, 2 Labatt, Master and Servant, § § 951 and 952; *Quackenbush* v. *Wis. & Minn. Rd. Co.,* 62 Wis. 411. Here the act expressly deprives the railway company of the defense of contributory negligence. The policy of the law on which the defense is excluded is that it is in the nature of a penalty for the neglect of the railroad company to comply with a regulation of the Legislature deemed necessary for the lives of its employees. We are of the opinion that such acts fall within the police power of the State, and are within the scope of legislative authority.

Again it is urged by counsel for appellant that Congress by act of April 22, 1908, has assumed jurisdiction over injuries to employees engaged in interstate commerce, and that such jurisdiction is exclusive.

In the case of *Chicago, Rock Island & Pacific Rd. Co.* v. *State,* 86 Ark. 412, this court held that the Arkansas statute requiring railroad companies to equip certain freight trains with at least three brakemen, insofar as it relates to interstate commerce, is not in conflict with any act of Congress on that subject, and is valid until Congress legislates on the same subject. The court, speaking through Chief Justice HILL, said: "There is no direct interference with the legislation of Congress relied upon by the act in question. Each may stand; each covers its own field; and there is no apparent ground of conflict possible in the operation of the two acts, for they do not reach the precise subject-matter."

So in the present case it may be said that Congress has not required railroad companies engaged in interstate commerce to fill or block all switches, frogs and guard rails on their roads or in their yards, and there is no conflict, therefore, between the act now under consideration and the act of Congress of April 22, 1908, commonly known as the Employers' Liability Act.

4. Counsel for appellant also contend that the court erred in submitting to the jury the question whether the place where McNamare received the injuries which resulted in his death was a yard on appellant's line of railroad, and urges that the court should have declared as a matter of law under the evidence adduced that such place was not a yard, within the meaning of the act of Missouri of February 28, 1907, above quoted. The case seems to have been tried on the theory that the act does not contemplate that all switches, frogs and guard rails on the road shall be filled or blocked, but that only such as are in yards, divisional and terminal stations and where trains are made up fall within the provisions of the act. Inasmuch as the question of filling or blocking frogs, switches and guard rails on all parts of the road may arise on a new trial of the case, and for the reason that neither the Supreme nor Appellate Courts of the State of Missouri have to our knowledge construed the act, we will refrain from considering this assignment of error.

5. Other assignments of error are urged upon us for our consideration, but they are upon questions of evidence and on the improper remarks of counsel in their argument to the jury, and they need not arise on a retrial of the cause. Hence we will not now consider them.

For the error in not granting appellant a change of venue as indicated in the opinion, the judgment will be reversed, and the cause remanded for a new trial.

McCULLOCH, C. J., (concurring). I concur in the judgment of reversal, because I think the trial court erred in hearing evidence as to the existence of the grounds for change of venue set forth in the petition, and in overruling the petition. But I do not concur in that part of the opinion which holds that "where the plaintiff shall have instituted suit in a county other than that of his residence, or of the county where the occurrence of which he complains took place, unless compelled to do so in order to

get service on the defendant," the change may be granted on presentation of a verified petition without supporting affidavits. I think the statute means that under such circumstances the petition must be verified, and must also be supported by the affidavits of at least two credible persons, as provided in section 7996 of Kirby's Digest, but that the grounds of the petition cannot be inquired into. This was what we stated in *St. Louis S. W. Ry. Co.* v. *Furlow,* 81 Ark. 496, to be the proper construction of the statute.

Section 7996 of Kirby's Digest provides in general terms what a party shall do in order to obtain a change of venue, and it requires the supporting affidavits of at least two credible persons. Section 7381 of Sandels & Hill's Digest, which was amended by the act of April 13, 1899, reads as follows:

"Upon presenting the petition and notice to such judge, he shall make an order for the change of the venue in such action to a county to which there is no valid objection, which in his judgment is most convenient to the parties and their witnesses."

Now, the only change wrought in the law by the act of 1899 is to allow the grounds stated in the petition to be inquired into by the court except in cases where the plaintiff improperly institutes the action in a county other than that of his residence or where the injury complained of occurred; and it is clear to me that the Legislature did not intend to change the form or substance of the petition, or to relieve the petitioner from the necessity of presenting supporting affidavits to his petition in order to show the good faith of his allegations that he "verily believes that he cannot obtain a fair and impartial trial of said action in the county in which the same is pending." My opinion is that the Legislature only intended to make the petition and the supporting affidavits of credible persons conclusive as to the existence of grounds for a change of venue, where the plaintiff has instituted an action in the wrong county, the same as the law stood as to all actions before the passage of the act.

The language of the act of 1899 fully bears out my construction. It begins with a declaration that "upon presentation of the petition, which may be resisted," etc., the court or judge shall make the order for a change if in his judgment it be necessary

to obtain a fair trial. What is meant by the word "petition" as thus used? Surely not a bare petition, without supporting affidavits; for section 7996, which is neither amended nor repealed, expressly provides that the petition must be accompanied by supporting affidavits. Now, if the Legislature used the words "presentation of the petition" in the beginning of this section without intending to dispense with the necessity for supporting affidavits, then it is reasonable to suppose that there was no intention, in using the words "presentation of the petition duly verified" in the concluding part of the section, to dispense with the requirement for supporting affidavits.

I think that in actions instituted in a county other than that of the plaintiff's residence, and other than the county where the injury complained of occurred, unless compelled to do so in order to get service of summons, the act of 1899 made no change in the requirements at all, and in such cases the defendant must still, as before, present a petition duly verified by affidavit, and supported by the affidavits of at least two credible persons. The inquiry of the court is then limited to the ascertainment whether or not the supporting affiants are credible persons; and if they are found to be such, the change of venue must be granted as a matter of course.