LIZZIE ALIDA SEXTON, ON BEHALF OF HERSELF AND THE NEXT OF KIN, v. NEWARK DISTRICT TELEGRAPH COMPANY, PROSECUTOR.

Submitted December 6, 1912—Decided February 25, 1913.

1. When a judgment of the Court of Common Pleas, awarding compensation in case of death under section 2 of the Employers' Liability act of 1911 (*Pamph. L., p.* 134, *ch.* 95), is removed to the Supreme Court by *certiorari*, the Supreme Court accepts the findings of the Common Pleas Court upon the facts if there be any legal evidence to warrant them.

2. Section 1 of the Employers' Liability act of April 4th, 1911 (*Pamph. L., p.* 134, *ch.* 95), allows a recovery only in cases where the employe can show that his injuries were caused by an accident "arising out of and in the course of his employment, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause." and "provided the employe was himself not wilfully negligent," and abolishes the common law defences of assumption of risk and the fellow-servant rule. *Held*, that, in modifying or abolishing such defences to an action for an injury sustained after the act became effective, the section does not violate the "due process of law" and "equal protection of the laws" provisions of the fourteenth amendment of the federal constitution, nor does it impair the obligation of contracts, in violation of the state and federal constitutions.

3. Section 2 of the Employers' Liability act of April 4th, 1911 (*Pamph. L.*, *p.* 134, *ch.* 95), provides that compensation shall be made "without regard to the negligence of the employer" when the employer and employe shall by agreement, either express or implied, accept the provisions of section 2, and where the personal injury or death for which compensation is sought is the result of an accident arising out of and in the course of the employment, in all cases except when the injury or death is intentionally self inflicted, or when intoxication is the natural and proximate cause of injury. The section further provides that, with respect to contracts of hiring made after the act becomes effective, it shall be presumed that the parties are acting under section 2 if one or the other does not then or before the accident expressly elect to operate under section 1. *Held*, that such provisions of section 2 are not in violation of the "due process of law" provision of the fourteenth amendment of the federal constitution.

4. The supplement of May 2d, 1911 (*Pamph. L.*, *p.* 763, *ch.* 368), was approved May 2d, 1911, and provides that it shall take effect on the 4th day of July next succeeding its passage and approval. On May 23d, 1911, Floyd Sexton was employed by the prosecutor. On July 4th, 1911, at five o'clock in the afternoon, he was killed whilst engaged in that employment. Proceedings were subsequently begun under section 2 of the Employers' Liability act of April 4th, 1911 (*Pamph. L.*, *p.* 134, *ch.* 95), to recover compensation for his death. *Held*—

(1) That, in view of the supplement of May 2d, 1911, which provides that "every contract of hiring  *  *  *  now in operation or made or implied prior to the time limited for the act to which this act is a supplement to take effect [July 4th, 1911], shall, after this act takes effect, be presumed to continue subject to the provisions of section two of the act to which this act is a supplement, unless either party shall, prior to accident, in writing, notify the other party to such contract that the provisions of section two of the act to which this act is a supplement are not intended to apply," there arose a presumption that Sexton's employment when killed was subject to the provisions of section two, it appearing that there was nothing in the contract to the contrary, and that the notice required by the supplement had not been given.

(2) That, under the facts as recited, there was no impairment of the obligation of the contract of employment.

5. In reviewing by *certiorari* a judgment of the Court of Common Pleas awarding compensation on account of the death of an employe under section 2 of the Employers' Liability act of 1911 (*Pamph. L.*, *p.* 134, *ch.* 95), an allegation that the provision of paragraph 9 of the act that "in the employment of minors section 2 shall be presumed to apply unless the notice be given by or to the parent or guardian of the minor" is void, will not be considered by the Supreme Court when it appears that decedent was thirty-four years old at the time of his death.

6. Section 2 of the Employers' Liability act of 1911 (*Pamph. L.*, p. 134, *ch.* 95), does not violate article 1, section 7 of the New Jersey constitution providing that "the right of a trial by jury shall remain inviolate."

On *certiorari*.

Before Justices TRENCHARD, PARKER and MINTURN.

For the prosecutor, *George W. Hubbell.*

For the defendant, *Harry V. Osborne.*

For the employers' liability commission, *Frank H. Sommer* and *Kinsley Twining.*

The opinion of the court was delivered by

TRENCHARD, J.   This writ brings up for review a judgment of the Essex County Common Pleas Court against the prosecutor in an action under the "Employers' Liability act," approved April 4th, 1911 (*Pamph. L., p.* 134, *ch.* 95), and the supplement thereto approved May 2d, 1911.   *Pamph. L., p.* 763, *ch.* 368.

The act of April 4th, 1911 (the main act), is divided into three sections.   The first six paragraphs are included within section 1, which is entitled "Compensation by Action at Law."

These paragraphs, so far as they are pertinent to this case, are as follows:

"*Section 1. Compensation by Action at Law.*—1. When personal injury is caused to an employe by accident arising out of and in the course of his employment, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause, he shall receive compensation therefor from his employer, provided the employe was himself not wilfully negligent at the time of receiving such injury, and the question of whether the employe was wilfully negligent shall be one of fact to be submitted to the jury subject to the usual superintending powers of a court to set aside a verdict rendered contrary to the evidence.

"2. The right to compensation as provided by section 1 of this act shall not be defeated upon the ground that the injury was caused in any degree by the negligence of a fellow employe; or that the injured employe assumed the risks inherent in or incidental to or arising out of his employment or arising from the failure of the employer to provide and maintain safe premises and suitable appliances; which said grounds of defense are hereby abolished. * * *

"4. The provisions of paragraphs one, two and three shall apply to any claim for the death of an employe arising under an act entitled 'An act to provide for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default,' approved March third, eighteen hundred and forty-eight, and the amendments thereof and supplements thereto.

"5. In all actions at law brought pursuant to section 1 of this act, the burden of proof to establish wilful negligence in the injured employe shall be upon the defendant." * * *

Paragraphs 7 to 22 inclusive are included within section 2, which is entitled "Elective Compensation," and, so far as pertinent, are as follows:

"*Section 2. Elective Compensation.*—7. When employer and employe shall by agreement, either express or implied, as hereinafter provided, accept the provisions of section 2 of this act, compensation for personal injuries to or for the death of such employe by accident arising out of and in the course of his employment shall be made by the employer without regard to the negligence of the employer, according to the schedule contained in paragraph eleven, in all cases except when the injury or death is intentionally self-inflicted, or when intoxication is the natural and proximate cause of injury, and the burden of proof of such fact shall be upon the employer.

"8. Such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in section 2 of this act, and an acceptance of all the provisions of section 2 of this act, and shall bind the employe himself and for compensation for his death shall bind his personal

representatives, his widow and next of kin, as well as the employer, and those conducting his business during bankruptcy or insolvency.

"9. Every contract of hiring made subsequent to the time provided for this act to take effect shall be presumed to have been made with reference to the provisions of section 2 of this act, and unless there be as a part of such contract an express statement in writing, prior to any accident, either in the contract itself or by written notice from either party to the other, that the provisions of section 2 of this act are not intended to apply, then it shall be presumed that the parties have accepted the provisions of section 2 of this act and have agreed to be bound thereby. In the employment of minors, section 2 shall be presumed to apply unless the notice be given by or to the parent or guardian of the minor.

"10. The contract for the operation of the provisions of section 2 of this act may be terminated by either party upon sixty days' notice in writing prior to any accident." * * *

(Paragraph 11 sets forth the schedule of compensation for injury. Paragraph 12 provides a basis of compensation in case of death.)

"18. In case of a dispute over, or failure to agree upon, a claim for compensation between employer and employe, or the dependents of the employe, either party may submit the claim, both as to questions of fact, the nature and effect of the injuries, and the amount of compensation therefor according to the schedule herein provided, to the judge of the court of common pleas of such county as would have jurisdiction in a civil case, or where there is more than one judge of said court, then to either or any of said judges of such court, which judge is hereby authorized to hear and determine such disputes in a summary manner, and his decision as to all questions of fact shall be conclusive and binding." * * *

The remaining paragraphs are included within section 3, which is entitled "General Provisions," and, so far as pertinent, are:

"24. In case for any reason any paragraph or any provision of this act shall be questioned in any court and shall be held

to be unconstitutional or invalid, the same shall not be held to affect any other paragraph or provision of this act, except that sections 1 and 2 are hereby declared to be inseparable, and if either section be declared void or inoperative in an essential part, so that the whole of such section must fall, the other section shall fall with it and not stand alone. Section 1 of this act shall not apply in cases where section 2 becomes operative in accordance with the provisions thereof, but shall apply in all other cases, and in such cases shall be in extension of the common law. * * *

"27. This act shall take effect on the fourth day of July next succeeding its passage and approval."

The act was approved April 4th, 1911.

The supplement of May 2d, 1911, is as follows:

"1. Every contract of hiring, verbal, written or implied from circumstances, now in operation or made or implied prior to the time limited for the act to which this act is a supplement to take effect, shall, after this act takes effect, be presumed to continue subject to the provisions of section two of the act to which this act is a supplement, unless either party shall, prior to accident, in writing, notify the other party to such contract that the provisions of section two of the act to which this act is a supplement are not intended to apply.

"2. This act shall take effect on the fourth day of July next succeeding its passage and approval."

This act was approved May 2d, 1911.

In the present case, a dispute arose as to the liability of the prosecutor, the employer of Floyd Sexton, to make compensation for the death of Sexton. A claim, made by his widow on behalf of herself and the next of kin, was presented to the judge of the Court of Common Pleas of the county of Essex, as allowed by paragraph 18 of the act. The claim was based upon the theory that there had been an implied acceptance by the employer of the provisions of section 2 of the act. A judgment in favor of the claimant, and against the prosecutor, was entered, computed upon the basis allowed by the act, and the employer sued out this writ.

FEBRUARY TERM, 1913.          91

55 *Vroom.*          Sexton v. Newark Dist. Telegraph Co.

The learned trial judge made certain findings of fact from which it appears that on July 4th, 1911, at about five o'clock in the afternoon, Floyd Sexton, the husband of the claimant, while employed by the prosecutor, met his death "by an accident arising out of and in the course of his employment," without any negligence whatsoever on his part.

The first reason assigned for reversal is "because the facts were not presented in such a way at the hearing as to give a ground for verdict for the plaintiff in *certiorari.*"

We assume that this reason is intended to raise the question whether the evidence before the trial judge was sufficient to warrant his findings of fact. As stated above, paragraph 18 of the act made the Common Pleas judge's "decision as to all questions of fact * * * conclusive and binding." Furthermore, paragraph 20 of the act, which relates to procedure in all cases of dispute, expressly provides that after the entry of judgment:

"Subsequent proceedings thereon shall only be for the recovery of moneys thereby determined to be due, provided that nothing herein contained shall be construed as limiting the jurisdiction of the Supreme Court to review *questions of law* by *certiorari.*"

Hence, when the judgment of the Common Pleas Court is removed by *certiorari* to the Supreme Court, the function of the writ is that of a writ of error. In such case the Supreme Court accepts the findings of the Common Pleas Court upon the facts if there be any legal evidence to warrant them. *Ryer* v. *Turkel,* 46 *Vroom* 677.

In the present case there was ample legal evidence to support such findings.

Other reasons for reversal aver that the main act of April 4th, 1911, violates the "due process of law" and "equal protection of the laws" provisions of the fourteenth amendment of the federal constitution, and that the act impairs the obligation of contracts, in violation of the state and federal constitutions.

The proceedings under review are not under section 1 of the act. But, sections 1 and 2 providing two entirely different

schemes—one regulative of the common law, and the other purely the creature of statute—are so interwoven and constitute so completely one single plan that it is unlikely that if section 1 is bad the legislature intended that section 2 should stand. Indeed, the contrary is expressly provided in paragraph 24 of the act. It is therefore necessary to consider the objections raised, as they may be applicable to either section. Section 1 allows a recovery only in cases where the employe can show that his injuries were caused by an accident "arising out of and in the course of his employment, *of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause,"* and "provided the employe was himself not wilfully negligent." The section does, however, abolish the common law defences of assumption of risk and the fellow servant rule.

Cases are numerous and we think uniform in holding that the defences modified or abolished by section 1 of the act may be modified or abolished by the legislative power when they relate, as here, to an injury sustained by an employe after the legislative provision becomes effective. *Missouri Railway Co.* v. *Mackey,* 127 *U. S.* 205; *Minneapolis, &c., Railway Co.* v. *Herrick, Id.* 210; *Tullis* v. *Lake Erie and Western Railroad Co.,* 175 *Id.* 348; *Chicago, Burlington and Quincy Railroad Co.* v. *McGuire,* 219 *Id.* 549; *Kibbe* v. *Stevenson Iron Min. Co.,* 136 *Fed. Rep.* 147; *Watson* v. *St. Louis Railroad Co.,* 169 *Id.* 942, 946; *Hancock* v. *N. & W. Ry. Co.,* 124 *N. C.* 222; *Ind. Union Railway Co.* v. *Houlihan,* 157 *Ind.* 494; *Vindicator Consolidated Gold Mining Co.* v. *Firstbrook,* 36 *Colo.* 498; *Quackenbush* v. *Railroad,* 62 *Wis.* 411; *Railroad* v. *McNamare,* 91 *Ark.* 515.

The last case in the United States Supreme Court with reference to the right to limit or abolish common law defences is *Second Employers' Liability Cases,* 223 *U. S.* 1. Mr. Justice Van Devanter, speaking for the court, said on *p.* 51:

"Of the objections to these changes it is enough to observe:

"*First.* 'A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other.

Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will * * * of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances.' *Munn* v. *Illinois,* 94 *U. S.* 113, 134; *Martin* v. *Pittsburg and Lake Erie Railroad Co.,* 203 *Id.* 284, 294; *The Lottawanna,* 21 *Wall,* 558, 577; *Western Union Telegraph Co.* v. *Commercial Milling Co.,* 218 *U. S.* 406, 417.

"*Second.* The natural tendency of the changes described is to impel the carriers to avoid or prevent the negligent acts and omissions which are made the basis of the rights of recovery which the statute creates and defines; and, as whatever makes for that end tends to promote the safety of the employes and to advance the commerce in which they are engaged, we entertain no doubt that in making those changes congress acted within the limits of the discretion confided to it by the constitution. *Lottery Case,* 188 *U. S.* 321, 353, 355; *Atlantic Coast Line Railroad Co.* v. *Riverside Mills,* 219 *Id.* 186, 203."

As a corollary to the above, the opinion proceeds on *p.* 52:

"Next in order is the objection that the provision in section 5, declaring void any contract, rule, regulation or device, the purpose or intent of which is to enable a carrier to exempt itself from the liability which the act creates, is repugnant to the fifth amendment to the constitution as an unwarranted interference with the liberty of the contract. But of this it suffices to say, in view of our recent decisions in *Chicago, Burlington and Quincy Railroad Co.* v. *McGuire,* 219 *U. S.* 549; *Atlantic Coast Line Railroad Co.* v. *Riverside Mills, Id.* 186, and *Baltimore and Ohio Railroad Co.* v. *Interstate Commerce Commission,* 221 *Id.* 612, that if congress possesses the power to impose that liability, which we here hold that it does, it also possesses the power to insure its efficacy by prohibiting any contract, rule, regulation or device in evasion of it."

See also Mr. Justice Moody's dissenting opinion in *Employers' Liability Cases,* 207 *U. S.* 463 (at *pp.* 536, 539).

This court has sustained the constitutionality of the 1909 Employers' Liability act (*Pamph. L., p.* 114), which act, as appears from the opinion, regulated the common law defences of employers. *Quigley* v. *Lehigh Valley Railroad Co.,* 51 *Vroom* 486.

Certainly, as against the objections stated, section 1 of the act is clearly a valid and constitutional enactment.

Section 2 of the act differs essentially from section 1 in that it provides that compensation shall be made "without regard to the negligence of the employer" when the employer and employe shall by agreement, either express or implied, accept the provisions of section 2, and where the personal injury or death for which compensation is sought is the result of an accident arising out of and in the course of the employment, in all cases except when the injury or death is intentionally self-inflicted, or when intoxication is the natural and proximate cause of injury.

Objection is made to this section upon the ground that it makes the employer liable to pay its employes compensation for injuries which were not due to the negligence of the employer. It is urged that such scheme can only be binding upon the employer with his consent, for otherwise the award of compensation provided by section 2 deprives him of his property without "due process of law."

This contention as an objection to the constitutionality of the act is wholly without substance and is apparently founded upon an insufficient consideration of the scheme of the statute. Under the act neither the employer nor the employe is bound to accept the provisions of section 2 unless he chooses to do so. If he does not he certainly is not deprived of property without due process of law. If he does, then he has given the consent which the prosecutor contends he must give in order to be bound by the provisions of the second section.

The authorities above cited are equally controlling here. No coercion was exercised by the legislature upon either party to the contract of hiring. It is left entirely optional with

them whether they will stand upon the first or second sections of the act. If both parties to the contract of hiring agree to operate under the second section neither can complain. If they do not agree, then by appropriate proceedings the dissatisfied party may operate under section 1 of the act.

Perhaps the real complaint of the prosecutor is that the legislature by paragraph 9 has created a presumption that, with respect to contracts of hiring made after the act becomes effective, the parties are acting under the second section, if one or the other does not then or before the accident expressly elect to operate under the first.

It cannot be doubted that under our industrial conditions and in order to avoid much confusion and unproductive litigation, it may well have been considered proper to establish some presumptive rule as to an election between section 1 and section 2 of the act.

It can make no practical difference whether the presumption is that the contract of hiring is subject to section 1 or to section 2, or whether both employer and employe are required to enter into some express contract accepting one or the other of the statutory alternatives. The latter course would naturally involve a very great amount of labor and trouble, especially on the part of employes.

The legislature has seen fit to adopt a presumptive rule, leaving the parties to overcome the presumption by their own act, if they desire to do so. It has also seen fit to adopt the presumption in favor of section 2, no doubt because it was thought that that offered the fairest basis for both employer and employe.

It would have been quite as competent for the legislature to have adopted either of the other alternatives suggested, but in its wisdom it has not seen fit to do so. Really, the matter comes down to a question of presumption or burden of proof, which it is entirely within the control of the legislature to regulate so long as the parties are left entirely free to make whatever contract they choose, as they are in this case. We are, therefore, of the opinion that, as against the objection stated, section 2 is constitutional.

It is further argued (though perhaps the point is not distinctly raised by the reasons) that the supplement (chapter 368) violates the constitution in that it impairs the obligation of a "pre-existing" contract. We think not. We think that, *as against the objections of the prosecutor,* it was competent for the legislature to enact the supplement; that it deprived *the prosecutor* of no constitutional rights, and a recovery may be had in this case although Sexton's death occurred at five o'clock in the afternoon of July 4th, 1911.

It is to be remarked that an act of the legislature is not to be declared void unless the violation of the constitution is so manifest as to leave no room for reasonable doubt. *Attorney-General* v. *McGuinness,* 49 *Vroom* 346.

Any consideration of the constitutional aspects either of the act or of the supplement must be limited to the question whether the proceedings under review violate the constitutional rights of the *prosecutor.* The question cannot be broader than that raised by the facts. That the act or the supplement may or may not deprive parties to supposititious cases of constitutional rights has no bearing upon the present case, if it appears that the *parties before the court* are not deprived of constitutional rights *by the proceeding under review.*

That the scope of the inquiry is so limited is too well settled to admit of dispute. *Cooley's Const. Lim.* (*6th ed.*) 196; *Lee* v. *State of New Jersey,* 207 *U. S.* 67, 70; *Williams* v. *Walsh,* 222 *Id.* 415, 423; *Pittsburg Steel Co.* v. *Baltimore Equitable Society,* 226 *Id.* 455; *State* v. *DeLorenzo,* 51 *Vroom* 500.

The situation in the present case is this:

On April 4th, 1911, the main act was approved. On May 2d, 1911, the supplement was approved, and on May 23d, 1911, Sexton's employment began. Under the rule above stated, we are not concerned with the effect of the supplement upon "pre-existing contracts," because Sexton's contract did not come into existence until May 23d, 1911. It is obvious that in the present instance the prosecutor could have inserted in its contract with Sexton that the provisions of section 2

were not to apply thereto. If Sexton had been unwilling to enter into such a contract he was free to refuse to do so. The contract in the present case was subject to no legislative interference, nor was there any restraint upon the freedom of both parties to make such contract as they saw fit. This being the case, the prosecutor is driven to the untenable position that even though it had elected that Sexton's contract of hiring should be with reference to section 2 (since the contract did not provide to the contrary), it cannot be bound by its election because it was not competent for the legislature to require it to elect.

Although the supplement provided that it should take effect on July 4th, it made ample provision whereby either Sexton or the prosecutor, in entering into the contract of May 23d, 1911, might prevent it from becoming subject to the provisions of section 2, either by so providing in the contract itself, or by giving notice to that effect prior to the occurrence of an accident, and that they did not do. All of the intervening time between May 2d, 1911, and July 4th, 1911, was allowed to both employers and employes to determine their attitude with regard to the law. No doubt during this interval both employers and employes considered the situation, which was given the widest publicity, so that by July 4th, 1911, they had had the fullest opportunity to determine what course they should adopt. We think it may be fairly said that, although the supplement did not become effective until July 4th, 1911, it had a potential existence from the date of its approval and that for a period of upwards of two months both employers and employes were put on notice of the presumption of the act and what it was necessary for them to do if it was desired that the presumption should not apply.

The following cases are ample authority for that proposition: *Lamb* v. *Powder River Live Stock Co.,* 132 *Fed. Rep.* 434; *Smith* v. *Morrison,* 22 *Pick.* 430; *Mulvey* v. *Boston,* 197 *Mass.* 184; *Osborne* v. *Lindstrom,* 9 *N. Dak.* 1; *State* v. *Krahmer,* 105 *Minn.* 422; *State* v. *Dirck,* 211 *Mo.* 568; *Diamond Glue Co.* v. *United States Glue Co.,* 187 *U. S.* 611; *Pennsylvania Co.* v. *State of Indiana,* 142 *Ind.* 428.

In *Stuhr* v. *Hoboken,* 18 *Vroom* 148, the Court of Errors and Appeals held that, where, after an ordinance is passed fixing a salary for the next ensuing term, an officer is elected, the ordinance will fix the salary for that term, although it did not, because of the necessity of publishing it take effect until after the term began.

In support of the point now under discussion, the prosecutor contends that the supplement is valid because it required the performance of an impossibility. The supplement took effect at the first moment of July 4th. The accident did not occur until five o'clock in the afternoon of that day. Since it is obvious that is was not impossible to give notice either on or before July 4th, the claim must rest upon the theory that the supplement required the giving of a sixty-day notice, and the accident occurring within sixty days after the employment, no such notice could have been given. Since, as a matter of fact, no notice was given by the prosecutor either on July 4th or prior thereto, it apparently acquiesced in the provisions of the supplement that the presumption should be binding. The prosecutor should not now be heard to say that it has been deprived of its property, or that its rights have been affected against its assent when it appears that assent had been given. It appeared that Sexton was at the office of the prosecutor several times during the day of July 4th, and was there as late as four thirty-five P. M., when he departed to do the work (as the trial judge found, under "the direction of the representative" of the prosecutor), which resulted in his death at five o'clock P. M.

We think that the supplement cannot be fairly construed as requiring the giving of a sixty-day notice. It is complete in itself. It applies only to contracts "now" (on May 2d, 1911), "in operation or made or implied prior to the time limited for the act to which this act is a supplement to take effect" (July 4th, 1911), to which class of contracts the main act did not apply, since it applied only to "every contract of hiring made subsequent to the time provided for this act to take effect" (July 4th, 1911). The supplement was not repealed or modified by anything in the main act because it

was approved about a month later than the main act. The supplement provides how either party may prevent section 2, not then operative, from becoming operative on and after July 4th. The main act, paragraph 10, provides for the termination of the provisions of section 2, which had already become operative. It expressly provides for the giving of a sixty-day notice in writing prior to any accident. The supplement expressly provides for the giving of a notice "prior to accident" which must mean at any time prior to accident, since if it had been intended that a notice should be given any specified number of days before the accident, that intention would have been expressed, or the supplement would have provided for the giving of the notice "provided for in the act to which this act is a supplement," or "provided for in paragraph 10 of the act to which this act is a supplement," instead of simply providing for the giving of a notice "prior to accident." We find nothing in the supplement to indicate an intention that if notice had been given prior to Sexton's accident a recovery could have been had under section 2, and we think the court would have had no difficulty in finding that if such notice had been given by Sexton or the prosecutor section 2 would not have applied.

We think, therefore, that in so far as the question is raised in these proceedings, which relates to a contract made *after the approval of the supplement,* it was competent for the legislature to enact the supplement, and that under it the recovery is justified since both Sexton and the prosecutor were free to protect themselves by their contract of hiring or to prevent the application of section 2 independently of the contract, by giving a proper notice at any time prior to the accident. Neither the act nor the supplement deprived the prosecutor of its right to bring the contract within section 1. The most which they did was to require the prosecutor to express its dissent or be bound by its failure to do so. That the contract operated under section 2 is wholly due to the prosecutor's default.

The fact that Sexton's contract of employment *was not in existence upon the date of the approval of the supplement,*

renders inapplicable the contention that the supplement impaired the obligation arising from the contract of employment. *J. A. Guillotte* v. *City of New Orleans,* 12 *La. Ann.* 432; *Lehigh Water Co.* v. *Easton,* 121 *U. S.* 388.

Statutes in principle essentially similar to the statute under consideration have in other jurisdictions been declared constitutional. See *State* v. *Clausen,* 63 *Wash.* 535; *Borgnis* v. *Falk Co.,* 147 *Wis.* 327; *Cunningham* v. *Northwestern Improvement Co.,* 44 *Mont.* 180.

These are cases construing recent workmen's compensation laws, the aim of which is to substitute, either by compulsion or by the voluntary act of the employers, for the common law liability for negligence, a definite payment by the employer, irrespective of negligence, which shall reach the workman or his dependents quickly and with small expense. The Washington and Montana cases cited above are cases construing acts where this substitution of the workmen's compensation principle is made compulsory. The Wisconsin act, like the New Jersey act, makes this substitution elective. We think no decision can be found which holds such acts unconstitutional where the substitution of the workmen's compensation principle has been made elective.

The much discussed decision of *Ives* v. *South Buffalo Railway Co.,* 201 *N. Y.* 271, which overthrew the compulsory New York act, is contrary to the decision in *State* v. *Clausen, supra,* where the compulsory Washington act was sustained. Even under the Ives case, however, our elective act would still be left constitutional. It was the *compulsory* feature of the New York act that was held violative of fundamental constitutional provisions. The Court of Appeals said:

"We conclude, therefore, that in its basic and vital features the right given to the employe by this statute does not preserve to the employer the 'due process of law' guaranteed by the constitution, for it authorizes the taking of the employer's property *without his consent* and without his fault."

See also *In re Opinion of Justices,* 209 *Mass.* 607.

The prosecutor next contends (though why is not clear from its reasons) that the main act is void because of the pro-

vision of paragraph 9 that "in the employment of minors section 2 shall be presumed to apply unless the notice be given by or to the parent or guardian of the minor."

We lay out of view the fact that this objection is now raised for the first time. It was not suggested in the pleadings nor at the trial.

We think the objection is not entitled to consideration in this case for this reason: the decedent (Sexton) was not a minor—he was thirty-four years old at the time of his death. *This* prosecutor is therefore not deprived of any constitutional rights by the judgment in favor of *this* defendant, even assuming (which we do not admit) that if the deceased had been a minor the judgment would have violated the prosecutor's constitutional rights.

Attack is next made upon section 2 of the act upon the alleged ground that it violates article 1, section 7, of the New Jersey constitution, providing that "the right of a trial by jury shall remain inviolate."

This contention totally misconceives the proper construction and effect of the constitutional provision in question. The language, with respect to this mode of trial, is that it shall remain inviolate, not that it shall be unalterable. *Clayton* v. *Clark,* 26 *Vroom* 539; *State* v. *DeLorenzo,* 52 *Id.* 613. It is therefore a privilege which may be waived by either party and not an absolute right which is not the subject of such a waiver.

The practice of waiving a trial by jury in civil cases or proceedings in this state is of such common occurrence as to attract no attention; and it has never been doubted in this state that such a waiver could be made.

Thus it is stated by Mr. Justice Van Syckel in *Joy & Seliger Co.* v. *Blum,* 26 *Vroom* 518 (at *p.* 520), "the right of trial by jury may be waived."

No distinction can be perceived between a waiver of this right by the parties after commencement of a suit and as incident to its prosecution and a general waiver as a result of a contract made prior to the commencement of legal proceedings, or, indeed, to the accrual of a possible cause of action.

Nor can any distinction be perceived between a waiver of the right in the form of an express contract between the parties and a waiver which may arise as a result of a legal presumption under legislative authority.

For a number of years we have had upon our statute books in connection with the various District Court acts provisions with respect to the right of trial by jury. Some of these provisions require a demand for a trial by jury at least one or two days before the return day of the summons. In some instances it is expressly provided that if such a demand be not made the right to trial by jury will be deemed to be waived. Other provisions contain no such express authority. In some instances, too, it is required that the party demanding the trial by jury shall with his demand advance the fees for the *venire* and jurymen. It has been uniformly held that provisions of this sort are entirely constitutional. *Clayton* v. *Clark,* 26 *Vroom* 539; *Condon* v. *Royce,* 39 *Id.* 222; *Humphrey* v. *Eakeley,* 43 *Id.* 424; *Haythorn* v. *Van Keuren & Son,* 50 *Id.* 101.

These cases all are on the theory that the right to trial by jury may be waived and that the legislature may prescribe the way in which the waiver may be evidenced. They are all applicable to the present statute. Either party to the contract of hiring may preserve his right to trial by jury by electing to stand upon the provisions of section 1 of the act. If he chooses, on the contrary, to stand upon the provisions of section 2 of the act by not giving notice or entering into an express stipulation in accordance with its terms, he has that option, and by exercising it by implication waives his right to a trial by jury.

The judgment will be affirmed, with costs.